**William R. MARABLE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–98–00126–CR.**

Court of Appeals of Texas, Texarkana.

Submitted Feb. 24, 1999.

Decided March 26, 1999.

William Brian Goza, Fort Worth, for appellant.

Charles M. Mallin, Dist. Attys. Office, Fort Worth, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

William R. Marable appeals his conviction for delivery of a controlled substance, cocaine of less than one gram. Marable was charged by indictment[1] for actual delivery of a controlled substance and pleaded not guilty. A jury found Marable guilty, and the trial court sentenced him to twenty months in the State Jail Division of the Texas Department of Criminal Justice.

Marable contends he did not receive sufficient notice of the theory of culpability under which the State would seek conviction for delivery of a controlled substance and the evidence was legally and factually insufficient to establish that he acted as a party to the delivery of a controlled substance.

Officer Dave Torsiello was working undercover for the Fort Worth Police Department, driving down East Berry Street during the afternoon of December 4, 1996. The department had received complaints that people were selling narcotics in the open by a roadway. As Officer Torsiello was driving, Valerie Whorley flagged him down and asked him what he was doing. Officer Torsiello told her he was looking for a place to score a couple of "dimes." A "dime" is a street term for ten dollars' worth of crack cocaine. Whorley told him she would take him to a place where he could buy crack cocaine if he would buy some for her as well. She directed him to East Bessie and Virginia Streets. Whor-

---

1. The indictment included this language: "then and there intentionally or knowingly deliver to D.A. Torsiello a controlled substance, namely cocaine of less than one gram, including any adulterants or dilutants, by actually transferring said controlled substance."

ley told Officer Torsiello that she wanted him to buy her ten dollars' worth of crack cocaine. Officer Torsiello told her he wanted twenty dollars' worth for himself and then he gave her thirty dollars.

Whorley got out of the car and approached Marable. After Whorley started talking to Marable, Officer Torsiello left and drove around the block twice. When he returned, Whorley told Officer Torsiello that she gave Marable the thirty dollars but that he did not give her any crack cocaine in return. Whorley then promised that if Officer Torsiello would give her another ten dollars, she would make sure he would get his cocaine this time. Officer Torsiello gave her another ten dollars and waited in the car ten-to-fifteen feet away from where Marable was standing. Officer Torsiello testified he saw the entire transaction. He saw Whorley give Marable the ten dollars, then Marable gave Whorley a small white rock, putting it in her left hand. Whorley walked back to where Officer Torsiello was parked and gave him the cocaine. Whorley walked away, and Marable walked into a nearby liquor store. Officer Torsiello radioed his backup team, and they arrested Marable. Officer Torsiello testified the money used for drug buys is photocopied so it can be identified later by its serial numbers. The backup team searched Marable and found three of the four ten dollar bills Officer Torsiello had given Whorley. The rock tested positive for cocaine.

Marable contends he did not receive sufficient notice of the theory of culpability under which the State would seek conviction for delivery of a controlled substance. He asserts this lack of notice deprived him of an opportunity to prepare a defense to the theory on which the State elected to proceed and prejudiced his substantial rights. The State contends Marable waived any claim that his indictment failed to give adequate notice because he failed to object before trial. The State also contends the indictment was sufficient to give Marable adequate notice.

■ An indictment for the delivery of a controlled substance must specify which type or types of delivery the State will rely upon and need not allege the precise manner by which a specified type of delivery was performed. "Deliver" means to transfer, actually or constructively, to another a controlled substance, counterfeit substance, or drug paraphernalia, regardless of whether there is an agency relationship. The term includes offering to sell a controlled substance, counterfeit substance, or drug paraphernalia.[2] Delivery of a controlled substance then might be accomplished in three distinct situations: actual transfer, constructive transfer, and offer to sell.[3]

■ A constructive delivery occurs when a seller transfers a controlled substance, either belonging to him or under his control, by some other person or means, at the direction of the seller.[4] Actual delivery consists of transferring real possession and control of a controlled substance from one person to another person.[5] The law of parties may be applied to the offense of delivery of a controlled substance.[6] To prove an accused acted as a party to the offense, the State must prove that the accused acted with intent to promote or assist in the commission of the offense by soliciting, encouraging, directing, aiding, or attempting to aid the other person in its commission.[7]

2. TEX. HEALTH & SAFETY CODE ANN. § 481.002(8) (Vernon 1992).

3. *Queen v. State,* 662 S.W.2d 338 (Tex.Crim. App.1983).

4. *Stolz v. State,* 962 S.W.2d 81, 82 (Tex.App.-Houston [1st Dist.] 1997, no pet. h.).

5. *Ammons v. State,* 782 S.W.2d 539 (Tex.App.-Houston [14th Dist.] 1989, no pet.).

6. *Rogers v. State,* 815 S.W.2d 789, 791 (Tex. App.-Houston [14th Dist.] 1991, pet. ref'd).

7. TEX. PEN.CODE ANN. § 7.02(a)(2) (Vernon 1994); *Martin v. State,* 753 S.W.2d 384, 385 (Tex.Crim.App.1988).

 We need not address the State's contention that Marable waived his argument that he did not receive sufficient notice in the indictment. The State alleged actual delivery in the indictment and presented evidence on actual delivery during the trial. There was no variance between the pleadings and proof presented at trial.[8] A written instrument is an indictment under the Texas Constitution if it accuses someone of a crime with enough clarity and specificity to identify the penal statute under which the State intends to prosecute, even if the instrument is otherwise defective.[9] The instant indictment met those requirements.

Marable is really complaining that he did not receive adequate notice to prepare his defense because the State did not allege in the indictment that it would prove actual delivery by the law of parties. Marable moved for an instructed verdict at the end of the State's case-in-chief, contending the State had proved a constructive delivery and not an actual delivery. Marable argued that since actual delivery was alleged in the indictment and constructive delivery was proved, the State had failed to prove a *prima facie* case on actual delivery. Marable also objected to the inclusion of the law of parties in the charge.

In *Crank v. State*,[10] the appellant filed written objections to the trial court's charge alleging that inclusion of a parties' theory in the court's charge when none had been in the indictment constituted an impermissible amendment of the indictment in violation of due process. The Court of Criminal Appeals held that a party to an offense may be charged with the offense without alleging the facts that make him a party to the offense and criminally responsible for the conduct of another.[11] The Court of Criminal Appeals also held that if the evidence supports a charge on the law of parties, the court may charge on the law of parties even though there is no such allegation in the indictment.[12]

In *Childress v. State*,[13] the Houston Court of Appeals held that if the evidence supports a charge on the law of parties, the court may charge on the law of parties even though there was no such allegation in the indictment. The court in *Childress* held the charge relating to the law of parties was properly submitted to the jury and did not constitute a theory not alleged in the indictment.[14] Section 7.01 of the Texas Penal Code provides in pertinent part that a person is criminally responsible as a party to an offense if the offense is committed by the conduct of another for which he is criminally responsible,[15] that each party to an offense may be charged with commission of the offense,[16] that all traditional distinctions between accomplices and principal are abolished by this section, and that each party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice.[17]

In *Ammons v. State*,[18] the appellant was charged with actually delivering a con-

8. *See Wray v. State*, 711 S.W.2d 631, 633 (Tex.Crim.App.1986) (holding if a variance exists between the allegations in the indictment and the proof, it may render the evidence insufficient to sustain the conviction).

9. *Duron v. State*, 956 S.W.2d 547, 550–51 (Tex.Crim.App.1997).

10. 761 S.W.2d 328 (Tex.Crim.App.1988).

11. *Id.* at 351; *Childress v. State*, 917 S.W.2d 489, 492 (Tex.App.-Houston [14th Dist.] 1996, no pet.).

12. *Crank*, 761 S.W.2d at 352; *Childress*, 917 S.W.2d at 492.

13. 917 S.W.2d 489.

14. *Id.* at 492.

15. TEX. PEN.CODE ANN. § 7.01(a) (Vernon 1994).

16. TEX. PEN.CODE ANN. § 7.01(b) (Vernon 1994).

17. TEX. PEN.CODE ANN. § 7.01(c) (Vernon 1994).

18. 782 S.W.2d 539 (Tex.App.-Houston [14th Dist.] 1989, no pet.).

trolled substance to a police officer through a third party. The appellant asserted that by using the law of parties in the jury charge but not in the indictment, the trial court had allowed an improper conviction on charges for which the appellant had inadequate notice to prepare his defense.[19] The court of appeals in *Ammons* held the application of the law of parties does not create an offense separate from the one in the indictment, nor did it serve to redefine the legislative definition of delivery at the time by providing a new definition of actual transfer.[20] The court stated that in its previous dealings with questions under Sections 7.01 and 7.02 of the Texas Penal Code, it concluded that an indictment which did not give reference to the law of parties did not present a constitutional infirmity.[21]

In light of the foregoing cases, the indictment did not need to include a statement indicating the State would prove its case under the law of parties. This point of error is overruled.

■ Marable contends the evidence was legally insufficient to establish that he acted as a party to the delivery of a controlled substance. He contends there was no evidence he acted with the intent to promote or assist Whorley in the delivery of the controlled substance to Officer Torsiello. Marable also contends there was no evidence that Whorley was acting as an agent, an employee, or at the direction of Marable.

When reviewing the legal sufficiency of the evidence, an appellate court must view the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[22] The appellate court must not disregard, realign, or weigh the evidence.[23] The trier of fact is the exclusive judge of the witnesses' credibility and the weight it gives their testimony.[24] The trier of fact may believe or disbelieve any portion of the testimony.[25]

Marable also contends the evidence was factually insufficient to establish that he acted as a party to the delivery of a controlled substance because there was no evidence that Marable acted with the intent the cocaine ultimately be delivered to Officer Torsiello. Specifically, this Court should consider the hypothesis that Marable believed the crack cocaine was to be delivered only to Whorley.

When reviewing the factual sufficiency of the evidence, the appellate court must review all of the evidence, but not in the light most favorable to the prosecution. It must set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust.[26] In conducting a factual sufficiency review of the evidence, due deference must be given the jury's assessment of the witnesses' credibility and their resolution of any conflicts in the evidence.[27]

■ In assessing the sufficiency of the evidence to convict a party to an offense, the evidence must directly or circumstantially show that Marable acted with the intent to promote or assist in the commission of the offense by soliciting,

19. *Id.* at 540.

20. *Id.* at 541.

21. *Id.* at 541 (citing *Martin v. State*, 704 S.W.2d 892, 894 (Tex.App.-Houston [14th Dist.] 1986, no pet.)).

22. *Teer v. State*, 923 S.W.2d 11, 17 (Tex.Crim. App.1996).

23. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim.App.1988).

24. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex.Crim.App.1984).

25. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim.App.1986).

26. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim.App.1996).

27. *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim.App.1996); *Clewis*, 922 S.W.2d at 135.

encouraging, directing, aiding, or attempting to aid another person in the commission of the delivery.[28] In determining whether one has acted as a party in the commission of a criminal offense, the jury may look to events occurring before, during, and after the offense, and reliance may be placed on actions which show an understanding and common design to engage in an act.[29] Participation in an enterprise may be inferred from the circumstances and need not be shown by direct evidence.[30]

In *Miller v. State*,[31] the appellant argued that the state had made no showing that he knew he was delivering LSD to the third-party recipient named in the indictment.[32] The evidence showed that an undercover officer met with a man at a bowling alley, who drove with the officer to appellant's residence and, leaving the officer in the car, went to the door of the house and purchased a package of LSD from appellant. At trial, the court instructed the jury on the law of principals.[33] The court held that the evidence was sufficient to sustain appellant's conviction for delivery of LSD to the officer.

It is difficult to conclude that there is a logical inference in the *Miller* case that the defendant knew he was delivering a controlled substance to the officer named in the indictment based upon the facts recited in the opinion. From what is stated in the opinion, there was no basis from which an inference could be made that the defendant knew he was selling to the officer. The authority *Miller* cites for the sufficiency of this evidence is the Court of Criminal Appeals holding in *Saddler v. State*, 167 Tex.Crim. 309, 320 S.W.2d 146 (1959). However, in the *Saddler* case, there was evidence that the defendant approached and had a conversation with the officer, that the officer asked the defendant for some weed, that the defendant walked around the corner with the third party, that the defendant then retrieved a package and put it down, that the third party brought the officer to the location where the package was, and that the officer picked up the package. The *Saddler* case clearly presents evidence that the defendant was aware of who the purchaser was and that the third party worked with him by accepting the money for the purchase, and by bringing the officer to the location of the controlled substance. The Court of Criminal Appeals in *Miller* went far beyond the precedent established in *Saddler*. The *Miller* rule which has been followed by another intermediate court[34] establishes a legal inference based upon the *Saddler* case, which did not create such a legal inference. Further, *Miller* is based upon questionable logic. We would hope that the Court of Criminal Appeals would see fit to revisit the precedent established in *Miller*.

In the present case, the evidence suggests that Whorley was working as an agent for Officer Torsiello. Torsiello suggested to her that he wanted to purchase drugs. The evidence only shows that after Torsiello's request, Whorley took him to an intersection where drugs were sold. This evidence does not show that Whorley was aware of any particular seller of drugs. Officer Torsiello paid her for making the drug purchase. There was no

28. Tex. Pen.Code Ann. § 7.02(a)(2) (Vernon 1994); *Dade v. State*, 848 S.W.2d 830, 832 (Tex.App.-Houston [14th Dist.] 1993, no pet.).

29. *Dade*, 848 S.W.2d at 832 (citing *Moore v. State*, 804 S.W.2d 165, 166 (Tex.App.-Houston [14th Dist.] 1991, no pet.)).

30. *Dade*, 848 S.W.2d at 832 (citing *Beardsley v. State*, 738 S.W.2d 681, 684 (Tex.Crim.App. 1987)).

31. 537 S.W.2d 725 (Tex.Crim.App.1976).

32. *Miller*, 537 S.W.2d at 726.

33. An antecedent version of the law of parties.

34. *Rogers v. State*, 815 S.W.2d 789, 791 (Tex. App.-Houston [14th Dist.] 1991, pet. ref'd); *Ammons v. State*, 782 S.W.2d 539 (Tex.App.-Houston [14th Dist.] 1989, no pet.).

evidence that Marable knew Whorley or that Whorley was in any way working on behalf of Marable. There was no evidence that Marable was aware of Officer Torsiello, although Marable was within Officer Torsiello's view, or that Marable was aware that Officer Torsiello was the real purchaser of the drugs. Officer Torsiello's mere presence in a car near the scene of the purchase does not show that Marable knew Officer Torsiello was the purchaser of the drugs. The evidence does show that Whorley made the purchase from Marable.

Nevertheless, based upon the doctrine of stare decisis, we are required to follow the Court of Criminal Appeals's precedent in *Miller*. The present case presents a similar fact situation to the relevant facts in *Miller*. The Court of Criminal Appeals instructs that from such facts, we should infer that Marable was aware the officer was waiting in the car and that Whorley was acting on Marable's behalf in delivering the cocaine to Officer Torsiello as the actual purchaser. Neither Marable nor Whorley testified. Based upon the holding by the Court of Criminal Appeals in *Miller*, we are compelled to hold that the evidence is legally and factually sufficient to support the verdict. These points of error are overruled.

The judgment is affirmed.